**Rafaela GARCIA, Plaintiff,**

v.

**RAINBO BAKING COMPANY OF HOUSTON, Defendant.**

**Civ. A. No. H–96–2276.**

United States District Court, S.D. Texas, Houston Division.

Aug. 28, 1997.

---

G. Scott Fiddler, Bellaire, TX, for Rafaela Garcia, plaintiff.

Joseph G. Galagaza, Neel Hooper & Kalmans, Houston, TX, for Rainbo Baking Co. of Houston, defendant.

## MEMORANDUM AND ORDER

ATLAS, District Judge.

Plaintiff Rafaela Garcia ("Plaintiff" or "Garcia") has brought this suit alleging that Defendant Rainbo Baking Company of Houston ("Defendant" or "Rainbo") violated Texas Labor Code § 451 by retaliating against her after she filed a workers' compensation claim. Defendant has filed **Motion for Summary Judgment** [Doc. # 20] ("Motion"), arguing that Plaintiff's Section 451 claim is preempted by the Labor Management Relations Act ("LMRA") and that there is no genuine issue of material fact on the claim.

For the reasons stated herein, the Court holds that, based upon the current record, Plaintiff's Section 451 claim is not preempted by the LMRA. Given Plaintiff's most recent pleading, which asserts only a Section 451 claim, there is no longer a federal question in this case and it is no longer appropriate for this Court to exercise jurisdiction over the claim. Therefore, Defendant's Motion for Summary Judgment is **DENIED**, and this case is **REMANDED** to the 190th Judicial District Court of Harris County, Texas.

## FACTUAL BACKGROUND

Rafaela Garcia began working for Rainbo, a Houston bakery, in 1977, and has been continuously employed at Rainbo since that time. She currently is employed as a packer. At all relevant times, she has been represented by Local No. 163 of the Bakery, Confectionary and Tobacco Workers International Union ("Union"), which has entered into a collective bargaining agreement ("CBA") with Rainbo. The CBA controls Plaintiff's wages, hours, break periods, and other terms and conditions of her employment.

On May 29, 1995, Garcia suffered an injury on the job and was treated by a doctor. She was not permitted to return to work until January 28, 1996. Although her doctor released her to return to work on September 13, 1995, Garcia contends that Darold DeHart, who at all relevant times was Employee Relations Director for Rainbo, prevented her from returning to work by creating unreasonable requirements and refusing to allow her to work "light duty." *See, e.g.,* Deposition of Rafaela Garcia (Exhibit A to Plaintiff's Response to Defendant's Motion for Summary Judgment [Doc. # 24] ("Plaintiff's Response")) ("Plaintiff's Deposition"), at 65–66, 79.[1] It is Garcia's contention that Rainbo refused to allow her to return to work in retaliation for her filing of a workers' compensation claim.[2] She alleges that DeHart told her that she had "filed too many workers' comp cases." Plaintiff's Deposition, at 19–22.[3] Moreover, Garcia and her sister, Rosalinda Garcia, both testified that DeHart harassed Garcia during a meeting with the Union representative, was hostile, and refused to accept the doctor's release that he had specifically requested. Deposition of Rosalinda Garcia (Exhibit B to Plaintiff's Response) ("Rosalinda Garcia Deposition"), at 29–30, 35–38, 48–49.

Defendant maintains that Garcia was not permitted to return to work because the releases from her physician contained several restrictions, including a rest break every hour, which were in conflict with the CBA and which Rainbo was unable to accommodate. Affidavit of Darold DeHart (Exhibit B to Motion) ("DeHart Affidavit"), ¶¶ 5–8, 14; Collective Bargaining Agreement (Exhibit 1 to DeHart Affidavit), Article IV §§ 3–4.[4]

---

1. Garcia states that, after an on-the-job injury in 1993, she filed a workers' compensation claim and that DeHart then allowed her to assume "light duty" so that she could return to work. Plaintiff's Deposition, at 80–82. She further states that Sandy Lopez, another packer for Rainbo, was given a break every hour after having been injured on the job. *Id.*

2. The Court notes that the workers' compensation claim filed by Garcia is not in the record and, moreover, that the parties' briefing does not disclose the date the claim was filed.

3. However, Garcia also testified in her deposition that she did not feel as though she had been treated differently because she filed a workers' compensation claim. Plaintiff's Deposition, at 97.

4. Garcia does not agree that her physician's releases created conditions in conflict with the CBA's provisions.

Garcia states, however, that she produced numerous medical releases in response to each of DeHart's requests and concerns, but that DeHart repeatedly refused to allow her to return to work, creating new requirements each time she complied with his previous requests. Plaintiff's Deposition, at 65–67, 79, 94; Rosalinda Garcia Deposition, at 21–22, 36–38. Garcia's doctor, Edward J. Wheeler, M.D., provided a series of notes and releases for Garcia during the fall of 1995, indicating his opinion that Garcia was able to return to work and perform her regular duties, and offering to speak with DeHart if he had any concerns as to Garcia's current abilities or to look over any papers DeHart wished to forward to him. *See* Correspondence from Edward J. Wheeler, M.D. (Exhibits 2–7 to DeHart Affidavit). Dr. Wheeler stated several times that he did not understand why Garcia had not been permitted to return to work. *See, e.g.,* Memorandum dated December 15, 1995 (Exhibit 6 to DeHart Affidavit) ("As stated on multiple forms previously the above pt can return to work as of 9/15/95. Her weight should not prevent her from doing her job & was *never* stated otherwise. If there are any questions or concerns *please* contact me or send me a new job description outlining your concerns on her [return to work].") (all emphasis original). Defendant maintains that the notes from Dr. Wheeler did not remove the relevant restriction in the original September 13, 1995 release, specifically, the need for frequent breaks. *See* DeHart Affidavit, at 3–4, ¶¶ 9–12.

On January 22, 1996, Dr. Wheeler wrote a lengthy letter to DeHart, in response to a letter DeHart had sent ten days earlier. Dr. Wheeler stated, among other things, that Garcia could stand "nearly all the 8–hour work period," could stoop or kneel to the floor to unjam or pick up bakery trays, and "can certainly return back to her previous occupation." *See* Letter dated January 22, 1996 (Exhibit 7 to DeHart Affidavit). During this same period, Garcia retained an attorney, who sent Rainbo a fifteen day demand letter on January 15, 1996.

On January 28, 1996, Garcia was permitted to return to work. Garcia maintains that Defendant had decided to terminate her but

reversed the decision after she retained an attorney. *See* Plaintiff's Response, at 8 (citing attachment to Affidavit of Scott Fiddler (Exhibit C to Plaintiff's Response) (letter from Mutual of Omaha to Rainbo reflecting record that Garcia had been terminated in December 1995 due to insufficient hours)). Rainbo states that the January 22, 1996 letter from Dr. Wheeler contained "lesser restrictions," eliminating the provision of hourly rest breaks and work days not in excess of eight hours, and therefore that Garcia's restrictions no longer conflicted with the CBA or the essential functions of her job. *See* DeHart Affidavit, at 4, ¶ 13.

### SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Bozé v. Branstetter,* 912 F.2d 801, 804 (5th Cir.1990). The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion. *Bozé,* 912 F.2d at 804 (citing *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986)). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy— that is, when both parties have submitted evidence of contradictory facts." *Laughlin v. Olszewski,* 102 F.3d 190, 193 (5th Cir. 1996).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. If the movant meets this initial burden, the burden shifts to the nonmovant to demonstrate with "significant probative evidence" that there is an issue of material fact so as to warrant a trial. *Texas Manufactured Hous. Ass'n v. Nederland,* 101 F.3d 1095, 1099 (5th Cir.1996), *cert.*

denied, —— U.S. ——, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997); *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 161 (5th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 586, 136 L.Ed.2d 515 (1996); *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir.1995); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.1994).

The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Douglass v. United Services Auto. Ass'n*, 65 F.3d 452, 459 (5th Cir.1995), *revised on other grounds*, 79 F.3d 1415 (5th Cir.1996) (en banc); *Little*, 37 F.3d at 1075. In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir.1995); *Little*, 37 F.3d at 1075 (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

## DISCUSSION

Defendant argues that summary judgment is appropriate because (1) Plaintiff's claim under the Labor Code is preempted by Sec-

tion 301 of the LMRA, and (2) even if Plaintiff's claim is not preempted, Rainbo has presented a legitimate nondiscriminatory reason for refusing to allow Plaintiff return to work (*i.e.*, Plaintiff's inability due to injury to adhere to the schedule as stated in the CBA) and Plaintiff has not created a fact question that this reason is a pretext for illegal discrimination.

This case was originally brought in state court and included an intentional infliction of emotional distress claim. Defendant removed the case to federal court on July 12, 1995. This Court denied Plaintiff's motion to remand on October 28, 1996, holding that Plaintiff's intentional infliction of emotional distress claim required interpretation of the CBA and therefore was preempted by the LMRA. *See* Order [Doc. # 8]; *Reece v. Houston Lighting and Power Co.*, 79 F.3d 485, 487 (5th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 171, 136 L.Ed.2d 112 (1996); *Baker v. Farmers Elec. Co-op., Inc.*, 34 F.3d 274, 282 (5th Cir.1994).[5] The Court also held that Garcia's Section 451 claim was removable pursuant to the doctrine of supplemental jurisdiction.

However, since the Court's order denying remand, Plaintiff has filed a First Amended Complaint which pleads only Section 451 of the Texas Labor Code, and does not assert a claim for intentional infliction of emotional distress. *See* First Amended Complaint [Doc. # 14]. Therefore, the prior basis for federal jurisdiction no longer exists, and the Court must address whether Garcia's Section 451 claim is preempted by the LMRA.[6] The burden to establish federal jurisdiction rests

---

**5.** This Court held that Garcia's intentional infliction of emotional distress claim was preempted because, in order to determine whether Rainbo's refusal to allow her to return to work was "extreme and outrageous," it would be necessary to interpret the CBA's provisions concerning work hours and breaks. *Compare Baker*, 34 F.3d at 282 (intentional infliction of emotional distress claim preempted by Section 301 because the plaintiff's claim "require[d] analysis of the CBA to determine whether the defendants' actions in reassigning him to the maintenance position were extreme and outrageous, a necessary element of his state law claim").

**6.** After the pretrial conference, the Court signed Rainbo's proposed order denying remand, which

held that the intentional infliction of emotional distress claim was preempted, and that this Court would exercise supplemental jurisdiction over the Section 451 claim. The order also included an alternative holding that, based upon the record at that time, interpretation of the CBA was required to resolve Plaintiff's Section 451 claim, and therefore that the Section 451 claim also was preempted. This proposition had been the subject of only cursory discussion in the parties' briefing, and was not argued at the pretrial conference. Based upon the current summary judgment briefing directly addressing this issue, as well as the Court's independent research, the Court now holds that Plaintiff's Section 451 claim is not preempted.

upon Rainbo, the party asserting jurisdiction. *See Marathon Oil Co. v. Ruhrgas, A.G.,* 115 F.3d 315, 318–19 (5th Cir.1997); *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir.1995).[7]

Based upon the current record, the Court now concludes that, although the intentional infliction of emotional distress claim was preempted, the Section 451 claim is not.[8] Therefore, Defendant's motion for summary judgment will be denied.

### LMRA Preemption of Plaintiff's Section 451 Claim

■■■ Section 301 of the LMRA preempts application of state law only when such application would require interpretation of a CBA. *Thomas v. LTV Corp.,* 39 F.3d 611, 616 (5th Cir.1994); *Jones v. Roadway Express, Inc.,* 931 F.2d 1086, 1089 (5th Cir.1991) (*"Jones I"*) (citing *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 413, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988)).[9]

A plaintiff's state law claims will not be preempted, even when they are 'intertwined' with a CBA, so long as they are not 'inextricably intertwined' with it. Indeed, either party may use a CBA to support the credibility of its claims.

*Jones I,* 931 F.2d at 1089 (internal citations omitted). In order to determine whether or not a state claim is "inextricably intertwined" with the interpretation of a CBA, and therefore preempted, it is necessary to analyze the elements of the particular claim. *Jones I,* 931 F.2d at 1089; *Fuller,* 942 F.Supp. at 311.

■■ The particular state claim brought in this case, Section 451 of the Texas Labor Code, provides that:

a person may not discharge or in any other manner discriminate against an employee because the employee has: (1) filed a workers' compensation claim in good faith; (2) hired a lawyer to represent the employee in a claim; (3) instituted or caused to be instituted in good faith a proceeding under Subtitle A; or (4) testified or is about to testify in a proceeding under Subtitle A.

Tex. Labor Code § 451.001. Under Section 451, Plaintiff first is required to show a "causal connection" between the discrimination and her workers' compensation claim; the employer must then rebut this prima facie case by articulating a legitimate reason for its action. *Jones I,* 931 F.2d at 1090; *Continental Coffee Products Co. v. Cazarez,* 937 S.W.2d 444, 450–52 (Tex.1996).

Garcia is alleging that she was discriminated against because she had filed a workers' compensation claim. As numerous courts have held, it is not necessary to interpret the CBA in order to resolve Garcia's claim that Rainbo's refusal to allow her to return to work was motivated by such illegal retaliation. Although the parties disagree over whether Dr. Wheeler's releases in fact created restrictions that conflicted with the CBA's provisions, it is not necessary to resolve the meaning of these provisions in order to determine whether Rainbo's actions were retaliatory. *See Thomas,* 39 F.3d at 620 ("application of state law is preempted by the LMRA only if such application depends upon the meaning of a CBA"); *Jones I,* 931 F.2d at 1090 ("[T]he basic issue in this case is whether a retaliatory discharge occurred. Resolution of this issue does not require an

---

7. Since a federal court may not act without subject matter jurisdiction, "[t]he appropriate course is to examine for subject matter jurisdiction constantly and, if it is found lacking, to remand to state court if appropriate, or otherwise dismiss." *See Marathon,* 115 F.3d at 318. Given the limited nature of federal jurisdiction, there is a strong presumption against it. *See id.* at 318–19.

8. There are numerous cases illustrating the different analyses appropriate for intentional infliction of emotional distress claims and retaliation claims. *See, e.g., Thomas v. LTV Corporation,* 39 F.3d 611 (5th Cir.1994); *Jones v. Roadway Express, Inc.,* 936 F.2d 789, 791–92 (5th Cir.1991) (*"Jones II"*); *Fuller v. Temple–Inland Forest Products Corp.,* 942 F.Supp. 307 (E.D.Tex.1996)

(Schell, J.); *Graef v. Chemical Leaman Tank Lines,* 860 F.Supp. 1170 (E.D.Tex.1994) (Cobb, J.).

9. Section 301 of the LMRA provides as follows:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

interpretation of the CBA."); *Graef,* 860 F.Supp. at 1172 ("the general rule is that a claim that an employer retaliated against an employee for filing a workers' compensation claim is not preempted by the LMRA"). Rather, the relevant question is whether Rainbo acted in retaliation for Plaintiff having filed a workers' compensation claim.[10] Since resolution of this question is not "inextricably intertwined" with interpretation of the CBA, it is not preempted.

■ Moreover, even if Rainbo's treatment of Garcia arguably was justified by the CBA, Garcia can bring a cause of action for retaliation if Rainbo *also* discriminated against her in retaliation for filing a workers' compensation claim. *Jones v. Roadway Express, Inc.,* 936 F.2d 789, 791 (5th Cir.1991) ("*Jones II* ") (citing *Azar Nut Co. v. Caille,* 720 S.W.2d 685, 687 (Tex.Civ.App.1986), *aff'd,* 734 S.W.2d 667 (Tex.1987); *Santex, Inc. v. Cunningham,* 618 S.W.2d 557 (Tex.Civ.App.1981, no writ)). If retaliation was "a factor," then interpretation of the CBA is not "inextricably intertwined" with the Section 451 claim. *See Jones II,* 936 F.2d at 791–92; *Jones I,* 931 F.2d at 1090; *Graef,* 860 F.Supp. at 1172. Garcia is not required to establish that her workers' compensation claim was the sole cause of the alleged discrimination. *See Thomas,* 39 F.3d at 620.

■ Finally, the Court is to consider whether the CBA is the source of the asserted right, thus making the claim "firmly rooted in the breach of the CBA itself," or wheth-er there is an independent source of the employee's right under state law. *Thomas,* 39 F.3d at 620 (citing *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994)); *Jones I,* 931 F.2d at 1090.[11] In the case at bar, of course, Plaintiff's Section 451 claim does not rest upon the interpretation of any CBA provision. Rather, Plaintiff's right to be free from retaliation is grounded in Texas statute, and not the CBA. This further supports the Court's holding that interpretation of the CBA is not inextricably intertwined with Plaintiff's claim.

### Remand of Plaintiff's Section 451 Claim

■ As discussed previously, this case was removed from state court, and remand was denied previously because Plaintiff was asserting a claim of intentional infliction of emotional distress, which was preempted by Section 301. However, since Plaintiff now has filed an amended pleading which no longer asserts an emotional distress claim, such a basis for preemption no longer exists. In addition, as the Court has held above, Garcia's Section 451 claim is not preempted by Section 301.[12]

Since there are no remaining claims over which the Court has original jurisdiction, this Court may remand the case to state court. *See* 28 U.S.C. § 1367(c)(3). Under the particular circumstances of this case, remand is required under Section 1445(c) of Title 28, which provides that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be

---

10. As stated herein, *see infra* note 12, there appears to be a fact question on the merits of Plaintiff's retaliation claim.

11. The *Thomas* Court held that the plaintiff's wrongful discharge claim was preempted by Section 301 because the plaintiff had "repeatedly and explicitly stated during his deposition that the basis for his wrongful discharge claim was the interpretation of the four-percent provision contained in the [Attendance Probation Agreement]; although given the opportunity, [the plaintiff] never claimed any other basis for his claim." *Thomas,* 39 F.3d at 621. Similarly, in *Medrano v. Excel Corporation,* 985 F.2d 230, 234 (5th Cir.1993), the Court held that the plaintiff's wrongful discharge claim was preempted because the dispute in the case was whether a particular provision of the CBA was itself illegal or discriminatory.

12. Were the Court to address the merits of Plaintiff's Section 451 claim, this Court would hold that summary judgment is inappropriate because a genuine question of material fact is created by Plaintiff's testimony that DeHart directly stated to her that she had "filed too many workers' comp cases." *See* Plaintiff's Deposition, at 19–22. Defendant argues that this is a stray remark. The Court disagrees. The remark was made by the person with authority over Plaintiff's requested return to work, and was made at or near the time of the dispute as to when Plaintiff could return to work. Finally, it is probative of the type of discrimination alleged. *See Brown v. CSC Logic, Inc.,* 82 F.3d 651, 655 (5th Cir.1996) (discussing stray remarks in context of age discrimination claim).

removed to any district court of the United States." 28 U.S.C. § 1445(c).[13]

Therefore, this case will be remanded to the 190th Judicial District Court of Harris County, Texas.[14]

### CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED** that Defendant's **Motion for Summary Judgment** [Doc. # 20] is **DENIED**. It is further

**ORDERED** that, since this Court no longer has subject matter jurisdiction, this case is **REMANDED** to the 190th Judicial District Court of Harris County, Texas.

---

**13.** The Fifth Circuit has held that an action under Texas Revised Civil Statute Ann. article 8307c, which was the predecessor statute to Section 451, was an action "arising under" the workers' compensation laws of Texas. *Jones I,* 931 F.2d at 1091.

**14.** Section 1445(c) did not require remand of the Section 451 claim when the case contained a properly preempted claim for intentional infliction of emotional distress, since the Court may exercise supplemental jurisdiction over an otherwise nonremovable claim, despite Section 1445(c). *See Cedillo v. Valcar Enterprises & Darling Delaware Co., Inc.,* 773 F.Supp. 932 (N.D.Tex.1991).